FILED
2017 Oct-02 AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**CIARA SILFIES,**

**PLAINTIFF,**

**V.** **CIVIL ACTION NO.**

**FREEDOM POWERSPORTS
HUNTSVILLE, LLC.,**

**DEFENDANT.** **JURY TRIAL DEMANDED**

# COMPLAINT

## I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e *et seq*. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq.* (Title VII) and the Pregnancy Discrimination Act. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for injunctive and other relief against gender and/or pregnancy discrimination.

2. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

3. Plaintiff, CIARA SILFIES, (hereinafter "Plaintiff") is a citizen of the United States, and a resident of Loveland, Larimer County, Colorado. Plaintiff was formerly employed by Defendant.

4. Defendant, FREEDOM POWERSPORTS HUNTSVILLE, LLC. (hereinafter "Defendant"), is registered and doing business in the State of Alabama and is an entity subject to suit under Title VII. Defendant employs at least fifteen (15) persons.

## III. STATEMENT OF THE FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6. Defendant hired Plaintiff on or about March 15, 2016.

7. Defendant employed Plaintiff at its store location found at 12401 South Memorial Highway in Huntsville, Alabama.

8. Defendant employed Plaintiff as Service Manager working at the service department taking care of the repairs and parts for ten different lines of motorcycle product and parts.

9. At all times while employed with Defendant, Plaintiff performed her

job duties in a competent or better manner.

10. Defendant terminated Plaintiff's employment on August 3, 2016.

11. Upon information and belief, shortly after Defendant terminated Plaintiff's employment, Defendant placed a non-pregnant person in Plaintiff's former position.

## IV. COUNT ONE – Title VII – Gender - Termination.

12. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 11 above.

13. Plaintiff is a female.

14. During her employment with Defendant, Plaintiff was pregnant.

15. On May 27, 2016, Plaintiff took a pregnancy test and learned that she was expecting a baby.

16. On June 27, 2016, Plaintiff was at work and not feeling well due to her pregnancy.

17. Plaintiff informed her supervisor, Daniel Franks, that she was sick due to her pregnancy and that she needed to leave work.

18. On the following date, Plaintiff missed work due to extreme morning sickness and anemia caused by pregnancy.

19. On June 30, 2016, Plaintiff returned for her next scheduled day of work.

20. On June 30, 2016, Daniel Franks issued Plaintiff two write-ups in the same day.

21. Franks issued the first write-up to Plaintiff for an absence that allegedly occurred on June 22, 2016.

22. Franks issued the second write- up to Plaintiff for another absence in which he stated Plaintiff was a no call/no show, even though Plaintiff had texted him about her whereabouts and the reason for her absence, which was because of morning sickness due to pregnancy.

23. Plaintiff told Greg Day that she thought Franks' treatment was unfair.

24. Day told Plaintiff "we would get together and talk about the situation."

25. In a previous instance of an employee missing work, Plaintiff observed Daniel Franks contact a male employee, Daniel Robinson, to ask about his lateness and whereabouts and express his concern for his well-being.

26. Daniel Franks made no such effort to contact Plaintiff to determine her whereabouts or express any concern for her illness.

27. Shortly after Franks issued the write-ups, Plaintiff contacted Greg Day.

28. Defendant told Plaintiff that Day was her direct supervisor.

29. Plaintiff submitted a complaint to Day about the write-ups and stated

that she believed that Franks rendered the write-ups to her because of her pregnancy and/or because of pregnancy related reasons.

30. On July 26, 2016, Defendant's District General Manager, Sean Chandler and Greg Day, commenced a two-day visit to the store and met with Plaintiff for approximately one hour to review her department.

31. During the meeting, Day and Sean made no attempt to speak with Plaintiff regarding her complaints about Franks' treatment or the write-ups related to her pregnancy.

32. On August 3, 2016, Daniel Franks terminated Plaintiff's employment for the alleged reason that she had too many "aged" repair orders.

33. Defendant's reason for terminating Plaintiff's employment is a pretext for pregnancy and sex discrimination.

34. Prior to Plaintiff's employment with Defendant, Defendant had not employed a service manager for a period of at least five months.

35. Without any training, Plaintiff commenced employment in a store that had a backlog of unworked and unbilled repair orders. Many of the aged repair orders that were the alleged basis for Plaintiff's termination are due to matters beyond any reasonable person's control, such as: bikes that could not be released to the owners because the Defendant placed a lien on the bike, customers that had not paid because Defendant had no contact information for the customer,

delinquent parts that were backordered due to Defendant's ordering process, open orders to repair bikes that were not on the premises, or parts that were needed to be returned.

36. Additionally, Franks employed Derek (LNU) as a sales manager.

37. Derek (LNU) was an underperforming employee.

38. Franks excused Derek (LNU)'s lack of performance and explained to Defendant's District General Manager that he did not want to terminate Derek because he was expecting to have a child.

39. Plaintiff was expecting to have a child, and Franks accused Plaintiff of underperformance, which was not true, and Daniel Franks chose to terminate Plaintiff's employment anyway.

40. In violation of the Pregnancy Discrimination Act, Defendant terminated Plaintiff's employment for underperformance, which was not true, but did not terminate the employment of a male employee that engaged in underperformance because he was a man whose wife was pregnant.

41. In violation of Title VII, Defendant's decision to terminate Plaintiff was, in whole or part, because of her gender.

42. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V. COUNT TWO – Title VII – Pregnancy - Termination

43. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 42 above.

44. During her employment with Defendant, Plaintiff was pregnant.

45. On May 27, 2016, Plaintiff took a pregnancy test and learned that she was expecting a baby.

46. On June 27, 2016, Plaintiff was at work and not feeling well due to her pregnancy.

47. Plaintiff informed her supervisor, Daniel Franks, that she was sick due to her pregnancy and that she needed to leave work.

48. On the following date, Plaintiff missed work due to extreme morning sickness and anemia caused by pregnancy.

49. On June 30, 2016, Plaintiff returned for her next scheduled day of work.

50. On June 30, 2016, Daniel Franks issued Plaintiff two write-ups in the same day.

51. Franks issued the first write-up to Plaintiff for an absence that allegedly occurred on June 22, 2016.

52. Franks issued the second write- up to Plaintiff for another absence in which he stated Plaintiff was a no call/no show, even though Plaintiff had texted him about her whereabouts and the reason for her absence, which was because of

morning sickness due to pregnancy.

53. Plaintiff told Greg Day that she thought Franks' treatment was unfair.

54. Day told Plaintiff "we would get together and talk about the situation."

55. In a previous instance of an employee missing work, Plaintiff observed Daniel Franks contact a male employee, Daniel Robinson, to ask about his lateness and whereabouts and express his concern for his well-being.

56. Daniel Franks made no such effort to contact Plaintiff to determine her whereabouts or express any concern for her illness.

57. Shortly after Franks issued the write-ups, Plaintiff contacted Greg Day.

58. Defendant told Plaintiff that Day was her direct supervisor.

59. Plaintiff submitted a complaint to Day about the write-ups and that she believed Franks rendered the write-ups to her because or her pregnancy and/or because of reasons that were pregnancy related.

60. On July 26, 2016, Defendant's District General Manager, Sean Chandler and Greg Day commenced a two-day visit to the store and met with Plaintiff for approximately one hour to review her department.

61. During the meeting, Day and Sean made no attempt to speak with Plaintiff regarding her complaints about Franks' treatment or the write-ups related

to her pregnancy.

62. On August 3, 2016, Daniel Franks terminated Plaintiff's employment for the alleged reason that she had too many "aged" repair orders.

63. Defendant's reason for terminating Plaintiff's employment is a pretext for pregnancy and sex discrimination.

64. Prior to Plaintiff's employment with Defendant, Defendant had not employed a service manager for a period of at least five months.

65. Without any training, Plaintiff commenced employment in a store that had a backlog of unworked and unbilled repair orders. Many of the aged repair orders that were the alleged basis for my termination are due to matters beyond any reasonable person's control, such as: bikes that could not be released to the owners because the Defendant placed a lien on the bike, customers that had not paid because Defendant had no contact information for the customer, delinquent parts that were backordered due to Defendant's ordering process, open orders to repair bikes that were not on the premises, or parts that were needed to be returned.

66. Additionally, Franks employed Derek (LNU) as a sales manager.

67. Derek (LNU) was an underperforming employee.

68. Franks excused Derek (LNU)'s lack of performance and explained it to Defendant's District General Manager that he did not want to terminate Derek because he was expecting to have a child.

69. Plaintiff was expecting to have a child, and Franks accused Plaintiff of underperformance, which was not true, and Daniel Franks chose to terminate Plaintiff's employment anyway.

70. In violation of the Pregnancy Discrimination Act, Defendant terminated Plaintiff's employment for underperformance, which was not true, but did not terminate the employment of a male employee that engaged in underperformance because he was a man whose wife was pregnant.

71. In violation of the Pregnancy Discrimination Act, Defendant's decision to terminate Plaintiff was, in whole or part, because of her pregnancy.

72. As a result of Defendant's violation of Pregnancy Discrimination Act, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII and the Pregnancy Discrimination Act.

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with

Defendant's request from continuing to violate Title VII and Pregnancy Discrimination Act.

C. Enter an Order requiring Defendant to make Plaintiff whole by awarding her front-pay, back pay (plus interest) compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

D. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

ALLEN D. ARNOLD

KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

OF COUNSEL

DEFENDANT'S ADDRESS:
FREEDOM POWERSPORTS HUNTSVILLE, LLC
c/o Capitol Corporate Services, Inc.
2 North Jackson Street, Ste. 605
Montgomery, AL 36104